# Exhibit 1



UNDER SECRETARY OF DEFENSE
4000 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-4000

OCT 2 0 2014

PERSONNEL AND
READINESS

The Honorable Natalie Tennant
Secretary of State
Bldg. 1, Suite 157-K
1900 Kanawha Blvd. East
Charleston, WV 25305-0770

Dear Secretary Tennant:

On October 10, 2014, the Department of Defense received from the State of West Virginia an application dated October 10, 2014, for an undue hardship waiver under the *Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)* for the November 4, 2014, General Election for Federal office.

Under delegated authority from the Secretary of Defense as the Presidential Designee for *UOCAVA*, I have reviewed the State's application, consulted with the representative of the Attorney General, and find it does not meet the requirements for an undue hardship waiver under 52 U.S.C. § 20302 (g)(2). Accordingly, I deny the State of West Virginia's request to waive the application of 52 U.S.C. §20302 (a)(8)(A) for the November 4, 2014, General Election.

This waiver denial is predicated on the assertions made by the State in support of its waiver request as explained in detail in the Memorandum enclosed with this letter. Based on those assertions and the attached rationale, I have determined the following: the State faces an undue hardship. However, the State's proposed comprehensive plan for this election does not provide sufficient time for *UOCAVA* voters to vote and have their ballots counted as a substitute for the requirement that absentee ballots be sent to all *UOCAVA* voters at least 45 days prior to Election Day.

Sincerely,

Jessica L. Wright

Enclosure:
As stated

EXPLANATION AND RATIONALE

Denial of State of West Virginia's Waiver Request
under 52 U.S.C. § 20302 (g)(2)
for the November 4, 2014, Federal General Election

The Federal Voting Assistance Program (FVAP) of the Department of Defense received the application of the State of West Virginia (the State), dated October 10, 2014, for an undue hardship waiver for the November 4, 2014, General Election for Federal office, as provided by the *Uniformed and Overseas Citizens Absentee Voting Act* (*UOCAVA*).[1] Denial of the waiver request and this explanation and rationale are predicated on the assertions made by the State in support of its waiver request in its October 10, 2014, official waiver request letter.[2]

Under delegated authority from the Secretary of Defense as the Presidential Designee for *UOCAVA*,[3] the Under Secretary of Defense for Personnel and Readiness has reviewed West Virginia's application, consulted with the representative of the Attorney General, and finds the State's application does not meet the requirements for a one-time undue hardship waiver under 52 U.S.C. § 20302 (g)(2)(B)(ii),[4] and denies West Virginia's waiver request from the application of 52 U.S.C. § 20302 (a)(8)(A)[5] for the November 4, 2014, Federal General Election. For purposes of this Memorandum, the term "Presidential Designee" includes those officials exercising authority delegated by the Presidential Designee.

## I. Background and Initial Findings

*UOCAVA* authorizes the Presidential Designee to grant a waiver only to those States whose reason for a waiver corresponds with one of the following situations:

1. The State's primary election date prohibits the State from complying with subsection (a)(8)(A);
2. The State has suffered a delay in generating ballots due to a legal contest; or
3. The State Constitution prohibits the State from complying with such Section.[6]

---

[1] 52 U.S.C § 20302 (*formerly* 42 U.S.C. § 1973ff, *et seq.*) *UOCAVA*'s waiver provision is found at 52 U.S.C. § 20302 (g)(2).

[2] West Virginia previously submitted a request for an undue hardship exemption based on the legal contest provision on October 1, 2014. On October 2, the Presidential Designee initiated a conference call between West Virginia State officials and officials from FVAP and the United States Department of Justice's Voting Section. By a letter dated October 3, 2014, and prior to the statutory deadline for issuing a determination under 52 U.S.C. § 20302 (g)(3), West Virginia withdrew the October 1 waiver request. On October 10, 2014, West Virginia filed a new request for an undue hardship exemption. In deciding the instant waiver application, the Presidential Designee has considered all the information provided by West Virginia in support of its current and previous waiver request.

[3] The Secretary of Defense was designated the Presidential Designee by Executive Order 12642 (June 8, 1988), 53 CFR § 21975. The Secretary of Defense has delegated this authority to the Under Secretary of Defense (Personnel & Readiness) through DOD Directive 5124.02.

[4] *Formerly* 42 U.S.C. § 1973ff-1(g)(2)(B)(ii).

[5] *Formerly* 42 U.S.C. § 1973ff-1(a)(8)(A).

[6] 52 U.S.C. § 20302 (g)(2)(B) (*formerly* 42 U.S.C. § 1973ff-1(g)(2)(B)).

1

West Virginia states that after transmitting *UOCAVA* ballots for the Federal General Election by *UOCAVA*'s 45-day statutory deadline of September 20, 2014, the West Virginia Supreme Court of Appeals decided a legal contest over the replacement of a candidate for the 35th Delegate District of the West Virginia House of Delegates. The Court entered an order on October 1, 2014, requiring the State to amend the ballot and send *UOCAVA* voters new ballots for the Federal General Election (which includes the offices of U.S. Senate and members of the U.S. House of Representatives, 2nd District). The State asserts that the ruling in this legal contest, issued eleven (11) days after the 45 day deadline for sending *UOCAVA* ballots, prevents the State from complying with 52 U.S.C. § 20302 (a)(8)(A).[7]

Under *UOCAVA*, if a State determines that it is unable to comply with the requirement to transmit absentee ballots at least 45 days before an election for Federal office (45-day prior requirement) due to one of the three situations referenced above resulting in an undue hardship, the Chief State Election Official shall request a waiver from the Presidential Designee pursuant to the Act. The Presidential Designee shall approve such a request if the Presidential Designee determines that:

1. One or more of the three referenced situations creates an undue hardship for the State; and,
2. The State's comprehensive plan presented in support of its request provides absent Uniformed Services and overseas voters (*UOCAVA* voters) sufficient time to receive and submit absentee ballots they have requested in time to be counted in the election for Federal office.

The Presidential Designee's findings for each of these requirements are addressed separately below.

In the memorandum of February 7, 2012, to Chief State Election Officials, the Director of FVAP provided guidance on *UOCAVA* ballot delivery waivers. In Appendix A, Section IV, Evaluation of Comprehensive Plans, the guidance concludes:

> "In summary, a State's comprehensive plan must provide sufficient time for *UOCAVA* voters to receive, mark, and return the ballot in time to be counted. The burden is upon the State to demonstrate that a waiver qualifying condition exists, that compliance with the requirements of *UOCAVA* in light of the condition presents an undue hardship to the State, and that the comprehensive plan provides the *UOCAVA* voters sufficient time to receive, mark, and return their ballots in time to be counted. To serve as a substitute for the 45-day prior requirement, the comprehensive plan must provide *UOCAVA* voters sufficient time to successfully vote as compared to the time available by strictly complying with *UOCAVA*'s minimum ballot transmission requirements."[8]

---

[7] *Formerly* 42 U.S.C. § 1973ff-1(a)(8)(A)); *see also* 52 U.S.C. § 20302 (g)(2)(B)(i) (*formerly* 42 U.S.C. § 1973ff-1(g)(2)(B)(i)).

[8] Guidance on *Uniformed and Overseas Citizen Absentee Voting Act (UOCAVA)* Ballot Delivery Waivers, Memorandum Dated February 7, 2012, available at http://www.fvap.gov/eo/waivers.

The comprehensive plan proposed by West Virginia addressed the following requirements set forth in *UOCAVA*:

> (i) the steps the State will take to ensure that *UOCAVA* voters have time to receive, mark, and submit their ballots in time to have those ballots counted in the election;
> (ii) why the plan provides *UOCAVA* voters sufficient time to vote as a substitute for the requirements of the *UOCAVA*; and
> (iii) the underlying factual information which explains how the plan provides such sufficient time to vote as a substitute for such requirements.[9]

Further, as required by 52 U.S.C. § 20302 (g)(1)(A),[10] West Virginia's application includes recognition that the purpose of the Act's 45-day transmission requirement is to allow *UOCAVA* voters enough time to vote and have their votes counted in an election for Federal office.

In determining whether the State's comprehensive plan provides sufficient time to vote as a substitute for the requirement to transmit ballots 45 days before the election, the Presidential Designee considered that the minimum absentee ballot requirements under the law require ballots to be transmitted 45 days prior to Election Day, using the voter's choice of either postal mail or electronic transmission method.

The State's comprehensive plan was evaluated against several criteria; the analysis as to whether the comprehensive plan provides sufficient time was examined by considering the totality of circumstances presented. Among the issues considered was the total time a voter has to receive, mark and return the ballot and have it counted (including the number of days before and after Election Day). Also among the issues considered was the cumulative number and accessibility of alternative methods of ballot transmission, and, if applicable, ballot return, as additional alternative methods provide more *UOCAVA* voters with the likelihood they will have sufficient time to receive, vote, and return their ballot and have it counted. Finally, the comprehensive plan was reviewed for any additional efforts made by the State that improved the likelihood a *UOCAVA* voter would be able to receive, vote and return the ballot and have it count.

## II. The State Has Shown Undue Hardship

West Virginia's Chief State Election Official has determined that the court decision in <u>West Virginia ex rel. Marie McDavid and Kanawha County Republican Executive Committee v. Natalie Tennant, Secretary of State, et al.</u>,[11] required that replacement ballots be sent to *UOCAVA* voters in the 35th Delegate District of the West Virginia House of Delegates. The State had previously met the 45-day prior requirement for transmitting ballots to *UOCAVA* voters for the November General Election. The court decision on October 1, 2014, requiring the printing and transmission of new ballots makes compliance with the 45-day prior requirement for the new ballots impossible.

---

[9] 52 U.S.C. § 20302 (g)(1)(D) (*formerly* 42 U.S.C. § 1973ff-1(g)(1)(D)).
[10] *Formerly* 42 U.S.C. § 1973ff-1(g)(1)(A).
[11] State ex rel. McDavid, et al. v. Tennant, et al., No. 14-0939 (W. Va. Oct. 1, 2014), http://www.courtswv.gov/supreme-court/memo-decisions/fall2014/14-0939memo.pdf.

3

For this reason, the State's waiver application has demonstrated an undue hardship.

### III. The State's Comprehensive Plan Provides Insufficient Time for *UOCAVA* Voters To Vote and Have That Vote Counted

The Presidential Designee concludes that West Virginia did not establish that its proposed comprehensive plan provides *UOCAVA* voters "sufficient time for *UOCAVA* voters to receive, mark, and return the ballot in time to be counted" in the November 4, 2014, Federal General Election.[12] In reaching this determination, the Presidential Designee examined the totality of circumstances presented in the plan to determine whether it provided sufficient time to vote as a substitute for *UOCAVA*'s requirement that ballots be transmitted at least 45 days prior to Election Day. Among the issues considered were the time voters have to receive, mark and return their ballots and have them counted (both before and after Election Day); the cumulative number of alternative methods of ballot transmission and return; and the accessibility of the alternative ballot transmission methods presented in the comprehensive plan.

Under its submitted comprehensive plan, West Virginia transmitted the new absentee ballots to *UOCAVA* voters on October 3, 2014, which is 32 days before the election. In West Virginia, *UOCAVA* ballots returned by postal mail are accepted six (6) days after Election Day, so long as the ballot envelope is postmarked by Election Day. This gives *UOCAVA* voters no more than 38 days of transit time rather than the 45 days provided by 52 U.S.C. § 20302 (a)(8)(A). Those *UOCAVA* voters who return voted ballots by electronic means must transmit their ballots no later than Election Day. This gives them no more than 32 days to receive, mark and return their ballots and have them counted.

We have considered the referenced ballot transit times provided in conjunction with the additional methods other than postal mail available to West Virginia's *UOCAVA* voters to receive and return their ballots. This includes the option of facsimile and email transmission of the ballot to the voter at the voter's request. In addition, the waiver application states that the new ballots sent to voters overseas who requested postal mail were sent by express service. Those overseas *UOCAVA* voters who received the new ballots by express mail were provided express return envelopes, and all other *UOCAVA* voters were informed by email or telephone that they may request that a prepaid express mail return envelope be sent to them. In addition to postal mail, all *UOCAVA* voters may return ballots by email or fax.

While these options may increase the opportunity for some *UOCAVA* voters to receive and cast timely ballots, we cannot conclude that West Virginia's plan ensures sufficient transit time for all *UOCAVA* voters to return their ballots in time to be counted. The voters' preferred method for receiving and returning balloting materials must be a factor, as must the likelihood that at least some *UOCAVA* voters will not have access to any means for electronic transmission of the voted ballot (e.g., Service members deployed in austere locations or otherwise lacking immediate access to the needed technology when they receive the new ballot).

---

[12] 52 U.S.C. § 20302 (g)(2)(A) (*formerly* 42 U.S.C. § 1973ff-1(g)(2)(A)).

4

We also have considered whether *UOCAVA* voters will have a reasonable opportunity for their votes to be counted, at least for the Federal elections, on the original ballots that were timely transmitted under *UOCAVA* prior to the West Virginia Supreme Court of Appeals' order. West Virginia has not supplied us with any authority under State law, particularly in light of the court's order, that provides certainty that those votes cast on the original ballots would be successfully counted if the *UOCAVA* voters' new ballots are not received in time to be counted. Accordingly, based on the information West Virginia has provided, it remains unclear whether *UOCAVA* voters would be disenfranchised if only the original, timely-transmitted, ballots are returned by the State's ballot receipt deadline.

## IV. Conclusion

The Presidential Designee has determined that in the totality of circumstances, West Virginia's comprehensive plan fails to provide absent Uniformed Services voters and overseas voters sufficient time to receive and submit absentee ballots they have requested in time to be counted in the November 4, 2014, election. Accordingly, the plan is not a sufficient substitute for 52 U.S.C. § 20302 (a)(8)(A)'s[13] requirement to transmit ballots 45 days in advance of Election Day in Federal elections, and thus cannot serve as the basis for granting a hardship waiver under 52 U.S.C. § 20302 (g)(2).[14]

If you have any questions or concerns, please contact Paddy McGuire, FVAP Deputy Director for State and Local Relations, at 571-372-0739, or paddy.mcguire@fvap.gov.

---

[13] *Formerly* 42 U.S.C. § 1973ff-1(a)(8)(A).
[14] *Formerly* 42 U.S.C. § 1973ff-1(g)(2).

5