IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:14-cv-27456 |
| v. ) | |
| ) | |
| THE STATE OF WEST VIRGINIA; and ) | |
| NATALIE E. TENNANT, Secretary of ) | |
| State of the State of West Virginia, in her ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR EMERGENCY SUPPLEMENTAL INJUNCTIVE RELIEF**

**I.   INTRODUCTION**

Plaintiff United States of America, pursuant to Rule 65 of the Federal Rules of Civil Procedure, respectfully moves for an order granting immediate injunctive relief against the State of West Virginia ("State") and Natalie Tennant, in her official capacity as West Virginia's Secretary of State (collectively "Defendants"), to enforce the requirements of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). 52 U.S.C. § 20301 *et seq*. The violation of UOCAVA in this case is undisputed. *See* Consent Decree, ¶¶ 5, 12, ECF No. 5. It is also undisputed that absent an order from this Court requiring the State to count the votes for Federal office cast by voters on the ballots transmitted on or before September 20, 2014 in accordance with UOCAVA, some of West Virginia's qualified absent uniformed services and overseas voters ("UOCAVA voters") may face disenfranchisement in the November 4, 2014 Federal general election.

1

Accordingly, to ensure that some of West Virginia's UOCAVA voters are not disenfranchised in the November 4, 2014 Federal general election, we request that this Court enter an emergency supplemental order requiring the Defendants to take such steps as are necessary to ensure that election officials count votes for federal office contained on all those original UOCAVA ballots that were transmitted to affected voters in State Delegate District 35 on or before September 20, 2014, that are returned by postal or express mail, provided that such ballots were executed on or before November 4, 2014 and received by November 17, 2014, or returned by email or facsimile by November 4, 2014, if that ballot is the only ballot returned by the UOCAVA voter by November 17, 2014 and is otherwise valid under State law.

## II.     BACKGROUND

This action arises from Defendants' failure to transmit final absentee ballots to UOCAVA voters in the 35th Delegate District of the West Virginia House of Delegates ("State Delegate District 35") by the 45th day before the November 4, 2014 Federal general election, as required by Section 102(a)(8)(A) of UOCAVA or to receive a waiver of that requirement pursuant to the hardship exemption provision in Section 102(g) of UOCAVA ("waiver").  52 U.S.C. § 20302(a)(8) and (g).

On or before September 20, 2014, the 45th day before the November 4, 2014 Federal general election, West Virginia timely transmitted absentee ballots ("original ballots") to UOCAVA voters in State Delegate District 35 from whom it had received applications.  *See* Consent Decree, ¶ 8, ECF No. 5.  On September 22, a petition for writ of mandamus was filed with the West Virginia Supreme Court of Appeals seeking to require the Secretary of State and the State Election Commission to allow the Kanawha County Republican Executive Committee to fill a ballot vacancy created by the withdrawal of a candidate for State Delegate District 35

and to invalidate all absentee ballots previously transmitted. *See* Pet. for Writ of Mandamus (Sept. 22, 2014), attached as Ex. 1. On October 1, 2014, eleven days after the original ballots were transmitted to UOCAVA voters in State Delegate District 35, the West Virginia Supreme Court of Appeals granted the requested writ of mandamus and ordered that the replacement candidate's name to be added to the ballot for the state legislative seat and that corrected ballots be transmitted to all absentee voters in that district, including the UOCAVA voters to whom ballots had already been transmitted on or before September 20, 2014. *See State ex rel. McDavid, et al. v. Tennant, et al.*, No. 14-0939 (W. Va. Oct. 1, 2014), attached as Ex. 2.

The State submitted a request for a hardship waiver to the Federal Voting Assistance Program ("FVAP") on October 1, 2014, asserting that it could not meet the 45-day transmittal deadline for the corrected ballots, and then withdrew its request on October 3, 2014. *See* Letters from Timothy G. Leach (Assistant General Counsel) to Matt Boehmer (FVAP Director) (Oct. 1 and 3, 2014), attached as Exs. 3, 4. On October 3, 2014, the 32nd day before the November 4, 2014 Federal general election, corrected ballots were transmitted to all of the UOCAVA voters in State District 35 to whom the original ballots had been transmitted on or before the UOCAVA transmission deadline of September 20, 2014.

On October 10, the State filed a new request for a hardship waiver with FVAP, again asserting it could not meet the 45-day transmittal deadline for the UOCAVA ballots due to the legal contest that resulted in the West Virginia Supreme Court of Appeals' order. *See* Letter from Timothy G. Leach (Assistant General Counsel) to Matt Boehmer (FVAP Director) (Oct. 10, 2014), attached as Ex. 5. On October 20, 2014, the Department of Defense denied the State's waiver request. *See* Letter from Jessica L. Wright (Under Secretary of Defense for Personnel

3

and Readiness) to The Honorable Natalie Tennant (Oct. 20, 2014) (with enclosure), attached as Ex. 6.

On October 27, 2014, more than three weeks after the West Virginia Supreme Court of Appeals' order and the week before the November 4, 2014 Federal general election, the Secretary of State filed an unopposed motion in the West Virginia Supreme Court of Appeals requesting clarification that the October 1 writ of mandamus does not require voiding the votes cast for federal office by UOCAVA voters on the original ballots if the corrected ballot is not received by the deadline. *See* Unopp. Mot. for Emergency Clarification, attached as Ex. 7. That Court denied the motion to clarify. *See* Order Refusing Mot. for Clarification (Oct. 30, 2014), attached as Ex. 8.

On October 31, 2014, the United States filed its Complaint alleging violations of UOCAVA arising from Defendants' failure to timely transmit final UOCAVA ballots to voters in State Delegate District 35 prior to the November 4, 2014 Federal general election. *See* Complaint, ECF No. 1. On November 3, 2014, this Court entered a consent decree under which the Defendants are required to take certain actions as a partial remedy for the stipulated violation of UOCAVA, including: 1) extending the state's deadline, to November 17, 2014, for counting the votes for Federal offices contained on the corrected ballots, and on Federal Write In Absentee Ballots, returned by affected UOCAVA voters, provided they were executed on or before November 4, 2014; 2) sending appropriate notice and instructions to affected UOCAVA voters; and 3) providing reports of actions taken pursuant to the consent decree. *See* Consent Decree, ECF No. 5.

On November 3, 2014, citing the West Virginia Supreme Court of Appeals' October 1 order requiring corrected ballots and its October 30 order denying the State's request to clarify

the earlier order, the Defendants advised the United States that absent a federal court order, they would not agree to issue an order to count votes for Federal office cast on the original UOCAVA ballots returned by affected voters, even if those ballots are the only ballots received from the voters.

As of the time of this filing, at least three affected UOCAVA voters in State Delegate District 35 have returned original ballots but have not returned corrected ballots for counting in the November 4, 2014 Federal general election and ten affected UOCAVA voters have returned neither the original nor the corrected ballot. *See* Email from Timothy G. Leach to Spencer R. Fisher and Sarabeth Donovan (Nov. 5, 2014) (indicating that two of the voters submitting original ballots stated they do not intend to vote the corrected ballot), attached as Ex. 9. In addition, the most recent such original ballot was returned on October 30, well after corrected ballots and notices were sent to voters, indicating the possibility that additional original ballots beyond the three currently at issue may be returned by UOCAVA voters prior to the State's extended ballot receipt deadline. *See* Email from Timothy G. Leach to Spencer R. Fisher and Sarabeth Donovan (Oct. 30, 2014), attached as Ex. 10.

### III.     ARGUMENT

The Consent Decree entered in this case affords affected UOCAVA voters in State Delegate District 35, who have received both original and corrected ballots, additional protections to ensure that they will have sufficient time to have their corrected ballots counted in the November 4, 2014 Federal general election. But because the State is unwilling to agree to count any votes for Federal office contained on the original ballots cast by UOCAVA voters, this may mean that some UOCAVA voters will not have their votes counted for the Federal offices at all. Thus, this Court must act to ensure a complete remedy for West Virginia's violation of

Federal law and to prevent the imminent disenfranchisement of voters entitled to vote under UOCAVA.

### A. THE STATUTORY BASIS FOR THIS ACTION

The core protection of UOCAVA is that each state shall allow qualified American citizens, both military and overseas civilian, the right "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 52 U.S.C. § 20302(a)(1). As part of this protection, UOCAVA requires that when a UOCAVA voter validly requests a ballot at least 45 days before an election for Federal office, a state must transmit the ballot to that voter not later than 45 days before the election, unless a waiver is granted. 52 U.S.C. § 20302(a)(8)(A) and (g). The State of West Virginia is responsible for ensuring UOCAVA compliance statewide. *See United States v. Alabama*, 857 F. Supp. 2d 1236, 1241 (M.D. Ala. 2012) (UOCAVA "imposes upon the State, as State, an affirmative obligation to ensure that UOCAVA ballots are sent, even if through local jurisdictions, in compliance with its strictures."); *United States v. New York*, No. 1:10-cv-1214, 2012 WL 254263, at *1 (N.D.N.Y. Jan. 27, 2012), attached as Ex. 11 ("New York is responsible for complying with UOCAVA and ensuring that validly-requested absentee ballots are sent to UOCAVA voters in accordance with its terms.").

### B. THE STANDARDS FOR INJUNCTIVE RELIEF

The standard for granting preliminary relief is well-established: a court may enter a preliminary injunction if the movant shows "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)*; see also Metro. Reg'l Info. Sys. v. Am. Home*

*Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013); *Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342, 345-47 (4th Cir. 2009). The United States has satisfied all of these factors here.

### 1. The United States Is Substantially Likely to Succeed on the Merits

The State's underlying violation of UOCAVA's ballot transmittal requirement is clear and undisputed. Defendants failed to transmit final corrected absentee ballots -- i.e., ballots that the State unquestionably will count -- to UOCAVA voters in State Delegate District 35 at least 45 days before the November 4, 2014 Federal general election. Nor did it receive a waiver of that federal law requirement under UOCAVA. *See* 52 U.S.C § 20302(a)(8); *see also* Consent Decree, ¶¶ 5, 12, ECF No. 5. Equally clear is that the State's failure to permit qualified UOCAVA voters, who timely requested an absentee ballot, to vote for Federal offices is a violation of UOCAVA. 52 U.S.C. § 20302(a)(1). UOCAVA voters who submit corrected ballots by the deadlines established by the consent decree will have a reasonable opportunity to have their votes counted. But absent the requested supplemental injunctive relief to count the original ballots, UOCAVA voters who made a timely request for and returned the original ballots and who did not return a corrected ballot will have no recourse to have their votes for Federal office counted in the Federal general election as UOCAVA guarantees. Such disenfranchisement violates UOCAVA.

Further, the West Virginia Supreme Court of Appeals' order creates no impediment to entry of the requested relief. In the first instance, the counting of votes for Federal races was not at issue before that court, since the sole issue there involved placement on the ballot of candidates for state legislative office. In any event, the Supremacy Clause of the United States Constitution, Article 6, Clause 2, dictates that state law, or state judicial orders that prevent

compliance with UOCAVA, must yield to the federal law protections that UOCAVA affords to uniformed services and overseas voters. *See United States v. Cunningham*, No. 3:08cv709, 2009 WL 3350028, at *7 (E.D. Va. Oct. 15, 2009), attached as Ex. 12 ("Virginia has an obligation under the Supremacy Clause to protect the federally-guaranteed civil right of UOCAVA voters to vote by absentee ballot in federal elections. To the extent that protecting that right conflicts with Virginia law, Virginia law must give way."); *see also Alabama*, 857 F. Supp. 2d at 1242 ("deference to state decision-making does not require the court to sit by idly and watch violations of the law persist. In some cases, and this is one, if 'federally-guaranteed voting rights are to be protected, the court must act.'").

Thus, the United States has amply demonstrated it is likely to succeed on the merits.

### 2. Affected West Virginia UOCAVA Voters Will Suffer Irreparable Harm Absent Immediate Injunctive Relief.

Unless the Court takes immediate action to remedy fully the State's UOCAVA violations some of West Virginia's UOCAVA voters are at serious risk of disenfranchisement. The right to vote is "fundamental." *Bartlett v. Strickland*, 129 S. Ct. 1231, 1240 (2009); *see Reynolds v. Sims*, 377 U.S. 533, 561 (1964). It is well-established that "[t]he right to vote means a right to cast a ballot that will be counted." *Reynolds,* 377 U.S. at 555; *see also Cunningham*, 2009 WL 3350028, at *7 (noting in the context of UOCAVA that "[i]f even a single voter" was deprived the right to vote "Defendants unquestionably violated UOCAVA.").

UOCAVA's mandate requires that West Virginia afford UOCAVA voters sufficient opportunity to receive, mark and return their absentee ballots in time to be counted for the November 4, 2014 Federal general election. Denial or abridgement of that right constitutes irreparable harm. *See Alabama*, 857 F. Supp. 2d at 1242 (concluding that irreparable harm existed because the State of Alabama had failed to adopt an adequate remedy to its UOCAVA

violation); *see also Montano v. Suffolk Cnty. Legislature*, 268 F. Supp. 2d 243, 260 (E.D.N.Y. 2003) ("An abridgement or dilution of the right to vote constitutes irreparable harm."); *Dillard v. Crenshaw Cnty.*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986).

As explained above, the potential for irreparable harm is not hypothetical. As of the time of this filing, at least three UOCAVA voters in State Delegate District 35 have returned only their original ballots and ten voters have yet to return either ballot. Thus, at least three UOCAVA voters will be disenfranchised and additional UOCAVA voters may be faced with the same prospect of disenfranchisement. While the precise scope of the harm is still unknown, the State has clearly stated its view that it cannot ensure that its UOCAVA voters who return only the original ballot will be able to vote for Federal offices in the November 4, 2014 election, and have that vote count. This constitutes irreparable harm.

### 3. Any Burden on Defendants is Minimal, and Is Far Outweighed by the Risk of Harm to West Virginia's UOCAVA Voters.

The supplemental remedy that the United States seeks is reasonable, easily-implemented, and appropriately tailored to remedy Defendants' violation of Federal law. Granting the requested injunction will impose minimal, if any, hardship on the Defendants. To the extent the Defendants argue otherwise, such burdens are outweighed by the injury inflicted on those West Virginia UOCAVA voters facing imminent disenfranchisement.

Under the terms of the consent decree, the State is already required to ensure that the post-election canvassing includes the votes for Federal office contained on any corrected ballots received by mail up until November 17, 2014. *See* Consent Decree, ¶ (1), ECF No. 5. This supplemental relief requested here requires only that the State ensure that the canvass includes the votes for Federal office contained on any original ballots received by mail by November 17, if the voter has not returned a corrected ballot. In its filing in the West Virginia Supreme Court

of Appeals advocating for this very procedure, the State failed to identify any burdens or hardships associated with counting these votes for Federal office on returned original ballots. *See* Ex. 7.

The requested supplemental relief will prevent the imminent disenfranchisement of UOCAVA voters. Courts remedying UOCAVA violations have routinely ordered far more extensive relief than that requested here. *See e.g. New York*, 2012 WL 254263, at *1, 2 (N.D.N.Y. Jan. 27, 2012) (changing New York's state law-prescribed non-presidential federal primary election date which prevented it from complying with UOCAVA's ballot transmission deadline); *see also Cunningham*, 2009 WL 3350028, at *10 n.3 (E.D.V.A. Oct. 15, 2009) (citing many United States District Court cases where an extension of the ballot receipt deadline had been entered as a remedy for a UOCAVA violation).

### 4. The Public Interest Favors Immediate Relief.

UOCAVA reflects Congress's determination that military and overseas voter participation in Federal elections is a vital national interest. *See New York*, No. 1:10-cv-1214, 2012 WL 254263, at *1 ("Nothing is more critical to a vibrant democratic society than citizen participation in government through the act of voting. It is unconscionable to send men and women overseas to preserve our democracy while simultaneously disenfranchising them while they are gone."); *Bush v. Hillsborough Cnty. Canvassing Bd.*, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000) ("[Voting is] a sacred element of the democratic process. For our citizens overseas, voting by absentee ballot may be the only practical means to exercise that right. For the members of our military, the absentee ballot is a cherished mechanism to voice their political opinion. . . . [It] should be provided no matter what their location."). The relief requested here

will advance the public interest by ensuring that West Virginia's UOCAVA voters, some of whom are members of the U.S. Armed Forces, can cast votes that will be counted.[1]

### C. CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court grant the United States' Motion for Emergency Supplemental Relief and enter the Proposed Order granting immediate relief for the violations of UOCAVA described herein.

Respectfully submitted,


Date: November 6, 2014

| | |
|---|---|
| R. BOOTH GOODWIN II<br>United States Attorney | VANITA GUPTA<br>Acting Assistant Attorney General<br>Civil Rights Division |
| By: /s/ *Gary L. Call*<br>GARY L. CALL<br>Assistant United States Attorney<br>WV State Bar No. 589<br>P.O. Box 1713<br>Charleston, WV  25326<br>Telephone:    (304) 345-2200<br>Facsimile:      (304) 347-5440<br>Washington, D.C. 20530<br>gary.call@usdoj.gov | /s/ *Spencer R. Fisher*<br>T. CHRISTIAN HERREN, JR.<br>SARABETH DONOVAN<br>SPENCER R. FISHER<br>Attorneys, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Telephone:    (202) 305-0015<br>Facsimile:      (202) 307-3961<br>spencer.fisher@usdoj.gov<br>sarabeth.donovan@usdoj.gov |

---

[1] Moreover, the public has a clear interest in the enforcement of Federal statutes that protect constitutional rights, including voting rights. *United States v. Raines*, 362 U.S. 17, 27 (1960) (reversing denial of preliminary injunction in voting rights case and holding that "there is the highest public interest in the due observance of all the constitutional guarantees, including those that bear the most directly on private rights"); *United States v. E. Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979) ("[T]he United States has an interest in enforcing Federal law that is independent of any claims of private citizens.  In the [voting rights] context the Supreme Court has characterized this as 'the highest public interest in the due observance of all constitutional guarantees.'" (quoting *Raines*, 362 U.S. at 27)); *see Herman v. S.C. Nat'l Bank*, 140 F.3d 1413 (11th Cir. 1998) (discussing *E. Baton Rouge Parish Sch. Bd.*, 594 F.2d at 58).

CERTIFICATE OF SERVICE

        I hereby certify that on November 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

RICHARD R. HEATH, JR.
Deputy Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
Telephone:     (304) 558-2021
Facsimile:      (304) 558-0140
richie.r.heath@wvago.gov

MISHA TSEYTLIN
Deputy Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
Telephone:     (304) 558-2021
Facsimile:      (304) 558-0140
misha.tseytlin@wvago.gov

J. ZAK RITCHIE
Assistant Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
Telephone:     (304) 558-2021
Facsimile:      (304) 558-0140
zak.j.ritchie@wvago.gov

JENNIFER S. GREENLIEF
Assistant Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
Telephone:     (304) 558-2021
Facsimile:      (304) 558-0140
jennifer.s.greenlief@wvago.gov

                                                          /s/ *Spencer R. Fisher*
                                                          Spencer R. Fisher