```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**UNITED STATES OF AMERICA,**

      Plaintiff,

v.                                              Civil Action No. 2:14-27456

**THE STATE OF WEST VIRGINIA**
**and NATALIE E. TENNANT,**
Secretary of State of West Virginia,
in her official capacity,

      Defendants.

### MEMORANDUM OPINION & ORDER

Pending is the plaintiff's motion for emergency supplemental injunctive relief, filed November 6, 2014. The defendants responded on November 7, 2014.

### I.

The Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C.A. §§ 20301-20311 (2012), requires states to permit uniformed service voters and overseas citizens to "vote by absentee ballot in general, special, primary, and runoff elections for Federal office[.]"  52 U.S.C.A. § 20302(a)(1).  There are two federal offices at stake here, namely, United States Senate and United States House of Representatives.

States are specifically responsible for transmitting absentee ballots to "absent uniformed service voter[s] or overseas voter[s] . . . not later than 45 days before the election," provided that the voter requests the ballot at least 45 days before the election. Id. § 20302(a)(8)(A). The purpose of the forty-five day requirement is to ensure that those voters have enough time to "receive, mark, and return" their ballots. See id. § 20302(g). Under the statutory framework, the deadline for transmitting absentee ballots to absent uniformed service members and overseas citizens (the "UOCAVA voters") who requested them at least 45 days before the recently held November 4, 2014 election was September 20, 2014. See Compl. ¶ 8.

The parties agree that the defendants initially transmitted ballots to UOCAVA voters in a timely manner on or before September 20, 2014 (the "original ballots"). See Consent Decree ¶ 8. Two days after that deadline, however, the Kanawha County Republican Executive Committee ("KREC") and Marie McDavid filed a petition for a writ of mandamus with the Supreme Court of Appeals of West Virginia, seeking to require the West Virginia Secretary of State and the State Election Committee to substitute McDavid as the Republican candidate in the race for the House of Delegates in the State's 35th House District

following the withdrawal of the party's original candidate.  See State ex rel. McDavid v. Tennant, No. 14-939, slip op. at 1-2 (W. Va. Oct. 1, 2014).  Specifically, the petition prayed that the Supreme Court of Appeals would compel the Secretary of State to certify McDavid and add her to the ballot, and -- critically -- instruct the Kanawha County Clerk to "mail valid ballots to all absentee voters with instructions that the invalid ballot that is incomplete shall be void."  On October 1, 2014, the Supreme Court of Appeals ruled in favor of McDavid and the KREC, granted the writ of mandamus, ordered McDavid's name to be added to the ballot, and ordered the Secretary of State to issue corrected ballots.  Id. at 10.  The court's opinion did not specifically address whether the original ballots were to be considered void but, as noted, the writ was granted.

On October 3, 2014, revised ballots listing McDavid as a candidate (the "corrected ballots") were transmitted to UOCAVA voters in the 35th House District.  Compl. ¶ 11.  The delay occasioned by the need to comply with the Supreme Court of Appeals' order meant that the corrected ballots were transmitted just 32 (rather than 45) days prior to the election.  As a result, on October 31, 2014, the United States initiated this action, charging the State and the Secretary of State with violating the UOCAVA and requesting: (1) "a declaratory judgment

3

under 28 U.S.C. § 2201 that the failure . . . to ensure that absentee ballots [were] transmitted . . . at least 45 days in advance of the November 4, 2014 [election] . . . violates 52 U.S.C. § 20302(a)(8)(A)"; and (2) an injunction ordering the defendants to "take such steps as are necessary to ensure that affected [overseas] voters in State Delegate District 35 have sufficient opportunity . . . to receive, mark, and return their ballots." See Compl. at Prayer of Relief.

The parties simultaneously filed a proposed consent decree that would have, among other things, extended the deadline for returning UOCAVA ballots until November 17, 2014. That consent decree, if entered, also would have required the Kanawha County Commission to count votes in the races for the United States Senate and House of Representatives cast on original ballots -- that is, those ballots not including McDavid as a candidate -- provided that the voter did not return a corrected ballot, and the original ballot was otherwise validly executed. The relief contemplated by the consent decree was, however, "explicitly conditioned upon the entry of an order by the West Virginia Supreme Court of Appeals . . . clarifying the scope of the ordered relief in [McDavid], . . . and confirming that the scope of the writ of mandamus issued in that case does not prohibit the counting of" the original, uncorrected absentee

4

ballots with respect to the two federal offices, "if that ballot is the only ballot returned[.]" Proposed Consent Decree at 8. Unbeknownst to the parties, the Supreme Court of Appeals had already declined to so clarify its order on October 30, 2014, thereby mooting the terms of the proposed consent decree.

On Monday, November 3, 2014, the parties submitted, and the court entered, a revised proposed consent decree that extended the deadline for returning UOCAVA ballots until November 17, 2014, as previously contemplated. The revised consent decree did not direct the State to count original ballots, but noted the court's continuing jurisdiction to "consider entry of any supplemental relief sought by the United States with regard to the counting of votes . . . on an original ballot . . . , if that ballot is the only ballot returned by that voter[.]" Consent Decree at 8. The United States has now moved for injunctive relief on precisely that point.

Based on information submitted by the United States in support of the motion, it appears that corrected ballots were sent to the thirty UOCAVA voters in the 35th House District who had requested a ballot. See Pl.'s Mot., Ex. 9 (E-mail from Tim Leach to Spencer Fisher and Sarabeth Donovan, dated November 5, 2014). As of November 5, 2014, seventeen of those voters had returned a corrected ballot. Id. Of the remaining thirteen

5

voters, ten have not returned either ballot, although five of them advised they had received the corrected ballot and "knew of no impediment," apparently meaning no impediment to returning it.  Id.  As to the remaining three, all of them had returned the original ballot.  Id.  Two of those three indicated receipt of the corrected ballot but did not intend to return it.  Id.  The last of those three is not shown to have responded with respect to the corrected ballot.  Id.

The United States argues that counting the original ballots is the only way to remedy the State's UOCAVA violation.  The State "does not oppose the relief requested by the United States[.]"  The Secretary of State "wishes to have the ballots of overseas and military voters counted," but interprets the Supreme Court of Appeals' refusal to clarify its order in McDavid, as an "indication that no Original Ballots can be counted."  See Response of Defendant Secretary of State to United States' Motion for Emergency Supplemental Injunctive Relief ("SOS Resp.") at 2 (emphasis in the original).  She professes to be "unable to take a position as to whether the order the United States requests here should be issued as a matter of federal law."  Id. at 7.

6

II.

"A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants[,] . . . . on a temporary basis, the relief that can be granted permanently after trial[.]" The Real Truth About Obama, Inc. v. FEC ("Real Truth I"), 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds, Citizens United v. FEC, 558 U.S. 310 (2010), and reissued as to Parts I & II, The Real Truth About Obama, Inc. v. FEC, 607 F.3d 355 (4th Cir. 2010) (per curiam). The party seeking the preliminary injunction must demonstrate:

> [1] [T]hat he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.

Id. at 346 (quoting and citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). All four elements must be established by "a clear showing" before the injunction will issue. Id.; see also Winter, 555 U.S. at 22 (stating that a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

The scope of the injunctive relief to be provided must also be appropriately drawn. "It is well established that injunctive relief should be no more burdensome to the defendant

than necessary to provide complete relief to the plaintiffs." Kentuckians for Commonwealth v. Rivenburgh, 317 F.3d 425, 436 (4th Cir. 2003) (quoting Califano v. Yamasaki, 442 U.S. 682, 702 (1979)). Indeed, as our court of appeals recently admonished, an injunction is improper if it "does not carefully address only the circumstances in the case," or sweeps more broadly than "necessary to provide complete relief to the plaintiff." PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011) (internal quotation marks and citation omitted).

From all that appears at this preliminary injunction stage, the state officials have taken such steps as necessary to ensure that affected overseas voters in House District 35 have sufficient opportunity to receive, mark and return ballots for the two federal offices. They have done so by sending out a corrected ballot and by joining in the consent decree entered by the court on November 3, 2014, which extended the time to November 17, 2014, for returning by mail the corrected ballot in keeping with the 45-day period prescribed by the UOCAVA. The thirty affected voters consist of seventeen who returned the corrected ballot, ten who returned neither the original nor the corrected ballot, two who returned the original ballot and indicated receipt of the corrected ballot but declined to return

8

it, and one who returned the original ballot but has not been heard from respecting the corrected ballot.

The court concludes that the United States has not, at this juncture, made a clear showing of likelihood of success on the merits of its claim that would have the latter three original ballots counted for the federal offices since a corrected ballot was not received from any of the three. Though apparently informed of the consequences, two of the three have chosen not to return a corrected ballot and the reason for the failure of the third to return a corrected ballot is unknown.

As to the remaining factors for the issuance of a preliminary injunction, irreparable harm will not be suffered in the absence of preliminary relief inasmuch as a full measure of relief may yet be afforded should it be found that a voter has been denied the right to cast his or her vote for the two federal offices. The balance of equities tips in favor of first fully developing the facts before compelling action that may prove to be improvident. Finally, a premature injunction is not in the public interest when it may ultimately be concluded, under the circumstances here, that the invalidation of the original ballots for federal offices by the Supreme Court of Appeals of West Virginia may, consistently with the UOCAVA, be upheld.

III.

In an effort to conclude this matter prior to the Governor's proclamation of the federal election outcome pursuant to W. Va. Code § 3-6-11, it is ORDERED that a final hearing on the merits of this action be held at 1:30 p.m. on December 1, 2014. It is further ORDERED that a pretrial conference be conducted at 1:30 p.m. on November 25, 2014.

The defendant Secretary of State is requested to undertake completion of, and file with the court by November 24, 2014, a comprehensive update of the report described on page 7 at paragraph (3) of the Consent Decree of November 3, 2014. It is anticipated that such additional information may provide the basis for a stipulation of facts on which the issues in this case may be submitted for final resolution, in which event the December 1st final hearing on the merits may become unnecessary.

The Clerk is requested to transmit a copy of this order to all counsel of record and any unrepresented parties.

                        ENTER: November 18, 2014

                        John T. Copenhaver, Jr.
                        United States District Judge