IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:14-cv-27456 |
| v. ) | |
| ) | |
| THE STATE OF WEST VIRGINIA; and ) | |
| NATALIE E. TENNANT, Secretary of ) | |
| State of the State of West Virginia, in her ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**UNITED STATES' BRIEF ON THE MERITS**

**I.     INTRODUCTION**

Defendants' failure to permit all qualified UOCAVA voters in West Virginia who timely requested an absentee ballot and timely returned it to vote for Federal offices in the November 4, 2014 Federal general election is a violation of the most fundamental protection of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA")—the right to have one's vote counted.  52 U.S.C. § 20302(a)(1) (2012).  The right to vote itself is "fundamental." *Bartlett v. Strickland*, 556 U.S. 1, 10 (2009); *see Reynolds v. Sims*, 377 U.S. 533, 561 (1964). Further, it is well-established that "[t]he right to vote means a right to cast a ballot that will be counted."  *Reynolds,* 377 U.S. at 555; *see also United States v. Cunningham*, No. 3:08cv709, 2009 WL 3350028, at *7 (E.D. Va. Oct. 15, 2009) (noting in the context of UOCAVA that "[i]f even a single voter" was deprived the right to vote "Defendants unquestionably violated UOCAVA.").

1

The basic guarantee of UOCAVA is that absent uniformed services or overseas voters who make a timely application, and timely return their voted ballot, are entitled to have their votes for Federal offices counted. UOCAVA reflects Congress's determination that military and overseas voter participation in Federal elections is a vital national interest. *See United States v. New York*, No. 1:10cv1214, 2012 WL 254263, at *1 (N.D.N.Y. Jan. 27, 2012) ("Nothing is more critical to a vibrant democratic society than citizen participation in government through the act of voting. It is unconscionable to send men and women overseas to preserve our democracy while simultaneously disenfranchising them while they are gone."); *Bush v. Hillsborough Cnty. Canvassing Bd.*, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000) ("[Voting is] a sacred element of the democratic process. For our citizens overseas, voting by absentee ballot may be the only practical means to exercise that right. For the members of our military, the absentee ballot is a cherished mechanism to voice their political opinion. . . . [It] should be provided no matter what their location.").

Defendants have failed in their obligation to the UOCAVA voters who returned only their original ballots. Consequently, this Court should order Defendants to require the counting of votes for Federal office contained on the original ballots returned by the UOCAVA voters at issue. Unless this Court orders the counting of these votes, the voters will have been disenfranchised in violation of federal law. Accordingly, regardless of the fact that it will not affect the outcome of any election, the United States seeks an order requiring the Defendants to ensure that the votes for Federal office contained on the four original UOCAVA ballots at issue are counted and the vote totals for the November 4, 2014 Federal general election are amended

to reflect those votes. Such an order, occurring after the initial certification of the election, would be entirely consistent with past precedent.[1]

## II. BACKGROUND FACTS

There are no contested issues of fact in this case. Defendant Secretary of State has filed an updated and amended report setting forth facts about and contacts with the affected UOCAVA voters, ECF Nos. 11, 11-1, 11-2, 13, 13-1, and 13-2, and the parties have filed a Stipulation of Undisputed Facts and Law, ECF No. 14.

On or before September 20, 2014, the 45 day deadline for transmittal of UOCAVA ballots, thirty-one UOCAVA ballots containing state and federal contests were timely transmitted to UOCAVA voters.[2] 52 U.S.C. § 20302(a)(8)(A). Among these thirty-one ballots were the four original UOCAVA ballots at issue in this case, sent to voters registered in West Virginia's 35th State House of Delegates District. ECF No. 14 at ¶ 9. That district is located entirely within Kanawha County ("County"). *Id*.

On October 1, 2014, the Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals") resolved a state-law contest over a ballot vacancy that had been created by the resignation of a candidate in the 35th State Delegate District race. *See State ex rel. McDavid, et al. v. Tennant*, et al., No. 14-0939, 2014 WL 4922641 (W. Va. Oct. 1, 2014) (granting the

---

[1] *See Cunningham*, 2009 WL 3350028, at *9 (ordering in October 2009 the Commonwealth of Virginia to count certain UOCAVA ballots cast in the November 4, 2008 Federal general election); *New York*, 2012 WL 254263, at *4 (ordering in January 2012 the State of New York to count certain UOCAVA ballots cast in the November 2, 2010 Federal general election if any such ballots were identified), attached as Ex. 1.

[2] UOCAVA protects members of a uniformed service or the merchant marine on active duty (overseas or within the United States) who, by reason of such active duty, are absent from their place of residence where they are otherwise qualified to vote, and their spouses and dependents who are absent by reason of the active duty or service of the member (hereafter "military voters") and citizens who reside outside the United States (hereafter "overseas citizens") (collectively referred to as UOCAVA voters). 52 U.S.C. § 20310(1), (5).

petitioners' writ of mandamus). On or about that same day, October 1, County officials communicated to affected UOCAVA voters that there had been a change in the 35th State Delegate District race, that they would be receiving a new ballot to reflect the change, and that they should return the original ballot in addition to the new ballot. ECF No. 14 at ¶ 34. This October 1st notice did not inform voters whether Federal contests on the original ballots were affected by the change, whether the votes for Federal office would be counted if only the original ballot were returned, or that the corrected ballot had to be returned for the votes to be counted. ECF No. 14 at ¶ 35, 36.

On October 3, 2014, well after UOCAVA's 45-day transmission deadline, corrected ballots, that made no change to the Federal offices contained on the original ballots, were transmitted to all thirty-one[3] affected UOCAVA voters along with a series of instructions concerning how to vote and return the corrected absentee ballot. Once again, like the October 1st communication, nothing in the October 3rd communication informed voters that they were required to return the corrected ballot to have their votes counted, or that the Federal offices voted on the original ballots would not be counted in the November 4, 2014 Federal general election. ECF No. 14 at ¶¶ 16, 37.

On October 8, 2014, the Secretary of State's office communicated by email or phone to affected UOCAVA voters that a change was made to the original ballots and that the State was attempting to transmit the revised corrected ballots to them. ECF No. 14 at ¶ 38. Yet again, as with the October 1st and 3rd communications, the Secretary of State's October 8th communication did not address the validity of the votes cast for Federal office on the original

---

[3] One of these 31 voters was later cancelled due to being registered in another jurisdiction. ECF No. 13-1 at 1, 3.

Case 2:14-cv-27456 Document 17 Filed 12/05/14 Page 5 of 19 PageID #: 397

ballots, nor did it indicate that the corrected ballot had to be returned to have the votes for the Federal offices counted. ECF No. 14 at ¶ 39.

Over the next few weeks, the State or County had several communications with the four affected UOCAVA voters who returned only their original ballots, referred to here as UOCAVA Voters # 20, # 21, # 22, and # 23 to maintain their anonymity. On October 8, 2014, the County received an email from affected UOCAVA Voter # 20, a military voter currently located in North Carolina, indicating that she had received the corrected ballot. ECF Nos. 13-1 at 4, 6, and 14 at ¶ 53. However, prior to November 3, 2014, the day before the election, neither the State nor the County informed Voter #20, in response to the October 8 email or otherwise, that she was *required* to return the corrected ballot or that the original ballot would not be counted. ECF Nos. 13-1 at 6, and 14 at ¶¶ 48.

On October 10, 2014, the County spoke by telephone with two affected UOCAVA voters currently located in Canada, Voters #21 and #22, who said that they had already returned the original ballots for counting and did not intend to submit corrected ballots because they had already shredded them. ECF No. 14 at ¶ 40. The County did not send another corrected ballot to Voters #21 and #22 after learning that the corrected ballots had been shredded, nor did the County inform the two voters that they had to return the corrected ballot for their vote to count, or that the original ballot would not be counted. ECF Nos. 11, 13-1, and 14.

On October 14, 2014, the Secretary of State's office sent an email to Voters #21 and #22 informing them that it was uncertain whether the original ballots would be counted, that they needed to return the corrected ballot to be sure, and to request a corrected ballot if they wanted one. ECF No. 14 at ¶ 41, 42. It is unclear whether Voters #21 or #22 ever received that email, as an email from Voter #22 received on November 10, 2014, well after the election, stated that

her computer had been broken and she was just then able to reply to emails, and that she had been afraid to return two ballots. ECF Nos. 13-1, and 14 at ¶ 56.

On October 17, 2014, the County spoke on the telephone with affected UOCAVA Voter # 23, a military voter currently located in North Carolina, who indicated that he had received the corrected ballot and planned to mail it back. ECF Nos. 13-1 at 6, and 14 at ¶ 54. Prior to November 3, 2014, Voter #23 was never told by the State or County, during the October 17 call or afterwards, that he *had* to return the corrected ballot or that the original ballot would not be counted. ECF Nos. 13-1, and 14 at ¶¶ 46, 48.

On October 21, 2014, just one week after its October 14th communication with Voters # 21 and 22, the Secretary of State's office informed the Department of Justice, as counsel for the United States, that the County board of canvassers had voted to accept all original ballots returned by the start of the canvass.[4] ECF No. 14 at ¶ 21. On October 22, 2014, the County sent a reminder email to affected UOCAVA voters urging them to "return [their] ballot" by Election Day. ECF No. 14 at ¶ 43. Like the previous communications to all affected UOCAVA voters on October 1st, 3rd, and 8th, this October 22nd communication did not address whether original ballots cast by UOCAVA voters would be counted, did not address the validity of the votes cast for the Federal offices on the original ballots, and did not tell voters that they had to return the corrected ballot in order for their votes to be counted. ECF No. 14 at ¶¶ 43-44.

On October 27, 2014, the Secretary of State filed an unopposed motion requesting clarification from the West Virginia Supreme Court of Appeals as to whether the writ of mandamus required voiding the votes cast for Federal office by UOCAVA voters on the original

---

[4] On October 3, 2014, in its letter to the Federal Voting Assistance Program ("FVAP") withdrawing its initial waiver request, the State also represented that the County intended to count the original UOCAVA ballots if they were the only ballot returned. ECF No. 14 at ¶ 15.

6

ballots. That unopposed motion was denied without comment on October 30, 2014. ECF No. 14 at ¶¶ 23, 25. On October 31, 2014, the United States filed this action, ECF No. 1, and on November 3, 2014, this Court entered a revised consent decree that extended the receipt deadline for the corrected ballots to November 17, 2014, and provided for continuing jurisdiction to consider additional relief sought by the United States regarding the counting of the original ballots. ECF Nos. 5, and 14 at ¶ 29. The consent decree also provided for Notice from the Secretary of State to affected UOCAVA voters who had not already returned corrected ballots. ECF Nos. 5, and 14 at ¶ 45.

The November 3, 2014 Notice, emailed at 9:39 p.m. on the day before Election Day, stated that voters were required to return the corrected ballot that had been transmitted to them on October 3, 2014 if they wished to have their vote counted in the election, and that the ballot must be postmarked no later than November 4, 2014 if returned by mail, and received no later than the closing of the polls on November 4, 2014, if returned by email. ECF Nos. 5-2, and 14 at ¶¶ 45, 46. This was the first time that affected UOCAVA voters were specifically instructed that they were required to return the corrected ballot to have their votes for Federal office counted in the election. ECF No. 14 at ¶ 48.

By the time the November 3rd Notice was issued, three of the four original UOCAVA ballots, from Voters # 21, 22, and 23, had already been received by mail by the County on October 13, 10, and 30, 2014. Also by that time, Voters # 21 and 22 had already shredded their corrected ballot. ECF Nos. 13-1 at 2, 6, and 14 at ¶¶ 51-56. Voter # 23 had only one day, the next day, to mark and mail the corrected ballot, or to mark it and make the necessary arrangements to scan it back into the computer so that it could be postmarked or emailed by November 4, 2014. ECF No. 13-1 at 4. No acknowledgment was received to indicate that Voter

# 20 ever received the November 3rd Notice instructing her to return the corrected ballot, and her original ballot was received by the County on November 4, 2014. ECF No. 13-1 at 2, 4. No corrected ballots were received from any of the four UOCAVA voters at issue. ECF No. 13-1 at 2, and 14 at ¶¶ 51, 52.[5]

It was not until after the election, on November 6, 2014, that the Secretary of State ordered the County not to count the original UOCAVA ballots at issue, ECF No. 14 at ¶ 31, further demonstrating that the disposition of the original ballots had remained in flux throughout the election period. Thus, ultimately, none of the votes for Federal office contained on the four original UOCAVA ballots at issue were counted in the canvass for the November 4, 2014 Federal general election. ECF No. 14 at ¶ 52.

On November 6, 2014, the United States filed a motion for emergency supplemental injunctive relief, seeking an order requiring Defendants to order that Kanawha County count the original ballots returned by any affected UOCAVA voters who had not returned a corrected ballot by November 17, 2014, the receipt deadline provided for in the Consent Decree. ECF Nos. 7, and 14 at ¶ 30. The State of West Virginia "d[id] not oppose the relief requested by the United States," ECF Nos. 8, and 14 at ¶ 33, and the West Virginia Secretary of State responded that "[she wa]s unable to take a position as to whether the [requested relief should be ordered] as a matter of federal law." ECF Nos. 9, and 14 at ¶ 32. On November 18, 2014, this Court declined to enter the preliminary relief requested by the United States. ECF No. 10.

As things now stand, four UOCAVA voters returned their original ballots and did not also return a corrected ballot. Absent an order from this Court, the votes for Federal office

---

[5] Eighteen UOCAVA voters returned corrected ballots, and eight UOCAVA voters failed to return either the original or the corrected ballot. ECF No. 14 at ¶¶ 49, 50.

contained on those four original UOCAVA ballots will not be included in the results of the November 4, 2014 Federal general election. *See* ECF No. 14 at ¶ 31; W. Va. Code §3-6-11.

## III. ARGUMENT

Defendants' refusal to count the votes for Federal office contained on the four absentee ballots at issue in this litigation denies qualified UOCAVA voters their federally protected right to vote for Federal office in the November 4, 2014 Federal general election. UOCAVA directs, among other things, that "states shall permit [military voters and overseas citizens] *to vote by absentee ballot* in general, special, primary, and runoff elections for Federal office." 52 U.S.C. § 20302(a)(1) (emphasis added). In establishing this obligation, Congress recognized that these categories of United States citizens face unique burdens when attempting to exercise their right to vote necessitating additional protections under federal law.

The issue that remains to be resolved in this case is whether votes for Federal office by the four UOCAVA voters who returned their original ballots, but not their corrected ballots, must be counted. In short, UOCAVA's well-established standards dictate that this Court order these votes to be counted. The failure to count the votes for Federal office from these UOCAVA voters plainly contravenes the mandate of 52 U.S.C. § 20302(a)(1) to permit qualified military and overseas voters to vote by absentee ballot in the November 4, 2014 Federal general election. This federal mandate extends to all UOCAVA voters. Moreover, because the requirements set forth in UOCAVA represent a congressional judgment of how states are to fulfill their obligation to protect the voting rights of military and overseas voters, West Virginia cannot be relieved of that obligation by reference to particular circumstances related to individual voters, such as whether they understood the implications of not returning the corrected ballot or had encountered

a personal challenge giving them a sufficient reason for returning only the original ballot they received from the election officials.

UOCAVA's requirement is straightforward: to invoke the protections the Federal law affords, and entry of the relief the United States requests here, it suffices that each of these four voters were among the voters protected by UOCAVA, timely requested an absentee ballot and returned it by the State's deadline. Neither the remedial provisions granted by the consent decree previously entered in this case, nor steps the Defendants took to notify these voters of their opportunity to cast a *different* ballot, undermine the necessity or validity of the requested relief. Nor does the Supreme Court of Appeals' ruling that ordered corrected ballots be sent to the UOCAVA voters—to resolve a purely state law issue involving a state contest on the ballot— impede this Court's power or obligation to prevent the disenfranchisement of these UOCAVA voters in elections for Federal office.

### A. The State Must Count the Votes for Federal Office Contained on the Four Original UOCAVA Ballots, Regardless of the Circumstances of the Voters.

Under UOCAVA, States must permit UOCAVA voters to use absentee procedures to vote for Federal office, and those UOCAVA ballots must be counted for Federal office if they have been timely requested and timely returned. 52 U.S.C. § 20302(a)(1).

It is undisputed that the four original UOCAVA ballots at issue in this case were timely requested by qualified UOCAVA voters, and they were timely returned. That should be the end of the inquiry into whether Defendants must count those ballots. Nonetheless, Defendants have declined to count the votes for Federal office contained on those ballots because the voters did not return a *different* ballot (a ballot containing corrections related solely to a state office) by the ballot receipt deadline.

10

UOCAVA reflects a congressional recognition that military and overseas voters should not be required to be continuously available during the election period in order to cast a ballot and have it counted. Over the years, Congress has adopted an increasingly clearcut set of rules for sending ballots to UOCAVA voters,[6] in part because it recognized that "election challenges and other unforeseen events can delay the finalization of ballots" and place unique burdens on these voters' ability to exercise their right to vote. 155 Cong. Rec. S10663-02, 2009 WL 3399032 (Cong. Rec.) at 29 (Statement of Senator Cornyn). In particular, Congress recognized that many members of the military, both domestic and overseas, and overseas voters may not be available throughout the period leading up to an election. 155 Cong. Rec. S10663-02, 2009 WL 3399032 (Cong. Rec.) at 30 (noting that many members of the military and their families are transferred quickly, exacerbating the hardships they face in voting). Importantly, in recognizing the distinctive issues military and overseas voters face as a category, Congress has never required that these voters demonstrate individualized personal circumstances, beyond establishing their qualification as a UOCAVA voter, to be granted the right to receive an absentee ballot and have their votes for Federal office counted. And when courts are determining the relief for UOCAVA violations, the idiosyncratic circumstances of individual UOCAVA voters are rarely, if ever, known and thus could not be factored into a determination of the validity of their ballots. A standard that would look at those circumstances to determine

---

[6] *See* Federal Voting Assistance Act of 1955, Acts Aug. 9, 1955, ch. 656, tit. I, 69 Stat. 584, 42 U.S.C. §§ 1973cc to 1973cc-3 (repealed 1986); Overseas Citizens Voting Rights Act of 1975, Pub. L. No. 94–203, 89 Stat. 1142, 42 U.S.C. § 1973dd (repealed 1986); Uniformed and Overseas Citizens Absentee Voting Act of 1986, Pub. L. No. 99-410, 100 Stat. 924 (codified as amended at 52 U.S.C. §§ 20301-11 (2012)); Uniformed and Overseas Citizens Absentee Voting Act Amendments of 2001, Pub. L. No. 107-107, 115 Stat. 1012 tit. XVI (codified as amended at 52 U.S.C. §§ 20301-11 (2012)); Uniformed and Overseas Citizens Absentee Voting Act Amendments of 2004, Pub. L. No. 108-375, 118 Stat. 1811 §§ 566-68 (codified as amended at 52 U.S.C. §§ 20301-11 (2012)); Military and Overseas Voter Empowerment Act of 2009, Pub. L. No. 111-84, 123 Stat. 2190, 2813 (codified as amended at 52 U.S.C. §§ 20301-11 (2012)).

whether to count a particular ballot would be wholly unworkable and would contravene the plain language and intent underlying the statute.

This case illustrates the general point. The undisputed evidence shows that the Defendants' transmittal of the corrected ballot and the numerous notices and instructions were confusing and did not, prior to an email sent the night before the election, inform the four affected UOCAVA voters that their votes for federal office would not be counted unless they returned the corrected ballot, even if they had already cast a vote on the original ballot. ECF Nos. 5-2, and 14 at ¶ 48. It would be inappropriate for this Court to decline to order their original ballots to be counted on the basis of speculation about what these voters did or did not intend or what they did or did not understand or how they could or could not have responded differently to a series of confusing notices about a last-minute change in voting procedure.[7]

Congress has continually recognized that time-sensitive burdens are not easily overcome by UOCAVA voters, and consequently has enacted UOCAVA's broad protections to facilitate voting by military voters and overseas citizens. Thus, for all of the above reasons, the Defendants should be required to count the four original UOCAVA ballots at issue, because they

---

[7] For instance, Voter # 22 was apprehensive about returning two ballots for counting in the election, had shredded the corrected ballots received by her and her son, who is Voter # 21, and had had computer problems preventing her from responding to the State's inquiries for some time period and possibly preventing her from even receiving them prior to Election Day. ECF Nos. 13, 13-1, and 14 at ¶¶ 55, 56. Voters # 20 and 23, both military voters, indicated that they had received corrected ballots, but neither Voter # 20 or 23 were told by the State or County prior to November 3, 2014, the day before the election, that they *had* to return the corrected ballot or that the original ballot would not be counted. ECF Nos. 13-1, and 14 at ¶ 48, 53, 54. Furthermore, Voter #20 never acknowledged even receiving the November 3rd notice. ECF No. 13-1 at 2, 4. And even if Voters # 20 or 23 did receive the November 3 notice, they would have had only one day—the next day, Election Day—to mark and return the corrected ballot so that it would be postmarked or emailed on November 4, 2014, in order to be counted. ECF Nos. 5-2, and 13-1.

were from UOCAVA voters and were timely requested and timely returned. That is all that UOCAVA requires.

> B. **The Consent Decree and Notices to Affected UOCAVA Voters Do Not Excuse the State's UOCAVA Violation for Failure to Count the Votes for Federal Office on the Original Ballots.**

The United States seeks to ensure full compliance with the protections of UOCAVA so that all UOCAVA voters, regardless of their circumstances, can have their votes counted. Neither the consent decree entered in this case nor the series of notices to voters provided an adequate remedy for the disenfranchisement of the four UOCAVA voters returning only original ballots, who did everything required of them under Federal law to timely request and timely return an absentee ballot and to have their votes for Federal office count.

The consent decree responded solely to the delay in sending corrected ballots. The decree was necessary because corrected ballots were transmitted to UOCAVA voters well after the 45-day deadline in violation of the Section 102(a)(8)(A) of UOCAVA and West Virginia failed to obtain a waiver from that requirement. ECF No. 5 at ¶ 12. Accordingly, the consent decree extended the ballot receipt deadline to provide a 45-day window for UOCAVA voters to return the corrected ballots. ECF No. 5 at ¶ (1). Although this remedial measure provided a greater opportunity for voters to return the corrected ballot in time to be counted, it did nothing to address the situation of voters who had cast their original ballot. The consent decree thus did not provide any relief for affected voters who returned only the original ballot and thus were dependent on that ballots being counted to give them the right to vote for Federal office. It was entirely reasonable to anticipate voter confusion that would result in some voters returning only the original ballot. UOCAVA voters had received two ballots from the County in a short period of time and because the question remained open as to whether the County would count the

original ballots, inconsistent information had been communicated in the notices to the voters about the status of the original ballots. In fact, the undisputed facts reveal that the validity of the original ballots was in flux throughout the relevant time period and the notices and instructions the voters received from the State and County, in their totality, were wholly inadequate to allow the voters to reasonably ascertain that they would be disenfranchised in the Federal elections if they returned only the original ballot. For these reasons, at the time the parties entered into the consent decree, they acknowledged that the deadline extension remedy only partially resolved the UOCAVA violations and that the counting of the original ballots and the possible disenfranchisement of some UOCAVA voters was still of concern. ECF No. 5 at 2. To ensure complete relief for voters affected by the State's violation, the United States preserved the right to seek the relief it now requests. ECF No. 5 at 8.

In addition, the consent decree included a requirement that Defendants provide a Notice to all affected UOCAVA voters. That Notice was intended "to afford affected UOCAVA voters an opportunity to learn of th[e] Court's order and to ensure that all affected UOCAVA voters in State Delegate District 35 receive[d] appropriate instructions explaining ballot return deadlines and the options and procedures for returning a corrected ballot." ECF No. 5 at ¶ (2). That Notice, communicated to voters at 9:49 p.m. on November 3, 2014, the day before Election Day, was the first time since corrected ballots were sent to affected UOCAVA voters a month earlier that all affected UOCAVA voters were informed that they had to return the corrected ballot to have their vote for Federal office counted in the election. ECF No. 14 at ¶ 48.

Throughout the month of October, the County and/or the Secretary of State transmitted to affected UOCAVA voters no fewer than three notices, and each time those notices focused on what to do with the corrected ballot. ECF No. 14 at ¶¶ 34, 37, 43. Each of those notices failed to

inform the voters that either the original ballots themselves or the votes for Federal office contained on those original ballots would not be counted in the November 4, 2014 Federal general election. In fact, only one communication sent prior to November 3, 2014 expressed any uncertainty about the validity of the original ballots themselves, and that email, dated October 14, 2014, was sent only to Voters # 21 and # 22, who had already shredded their corrected ballots. ECF Nos. 5 at ¶ (2), 13-1, and 14 at 42.

Moreover, the State itself engendered the uncertainty regarding the counting of the original ballots throughout the month of October, as evidenced by: (1) the State's October 3 letter to FVAP withdrawing its waiver request stating that it had received assurances that original ballots would be counted; (2) the State's October 21 communication to the United States indicating that the County had voted to accept original ballots returned by the start of canvass; and (3) the State's failure to seek clarification from the West Virginia Supreme Court of Appeals concerning the validity of votes for Federal office contained on original ballots until October 27, 2014, just one week before Election Day. ECF No. 14 at ¶¶ 15, 21, 23. Thus, the issue of the validity of original ballots was itself an open-ended question as evidenced by the State's actions and the content of its communications to affected voters.

Just as the subjective circumstances of UOCAVA voters are not determinative of the validity of those voters' ballots, the notices provided to such voters are not determinative of whether these voters are entitled to have their votes for Federal office counted. Put simply, notices concerning corrected ballots and the corrected ballots themselves, regardless of their content, cannot absolve the State of its responsibility to count votes for Federal office contained on timely transmitted and timely received ballots of affected UOCAVA voters. Even assuming that the notices provided by the State could impact the validity of votes for Federal office

15

contained on a UOCAVA voter's ballot, the notices here were wholly ineffective for that purpose. The lack of clarity on the part of the State concerning the validity of votes for Federal office on original ballots resulted in the potential for confusion on the part of affected UOCAVA voters as this information was not timely or accurately communicated. This potential for confusion further supports the request for relief in this matter**.**

### C. Votes for Federal Office Contained on the Original Ballots Were Not Invalidated by the West Virginia State Court's Decision.

The UOCAVA voters at issue in this case sought to exercise their federally-guaranteed right to vote under UOCAVA by timely requesting a ballot and returning the original ballot sent to them by the deadline for counting ballots. The Federal contests on the original ballot were not at issue in the Supreme Court of Appeals' proceedings to resolve a state law dispute over the replacement of a state legislative candidate in the 35th State Delegate District race, and the original and corrected ballots did not differ with respect to these Federal offices. Although the Secretary of State interprets the Supreme Court of Appeals' October 30, 2014 decision as an affirmative indication that the writ of mandamus granted by the state court prohibits the counting of any votes cast on any original ballot, ECF No. 14 at ¶ 26, no parties to this action allege that the state court's decision affected the Federal contests contained on these ballots in any way. Indeed, neither Defendant in this case, nor the County, have indicated any opposition to counting the votes for Federal office contained on the four original UOCAVA ballots at issue if directed to do so by this Court. And neither of the Defendants, nor the County, has indicated any impediment or burden associated with counting the Federal contests on those four ballots. Thus

there is simply no reason, under state or federal law, to invalidate the original ballot for purposes of counting votes for the Federal offices.[8]

The relief requested by the United States, that the County count only the votes for Federal office on these four original ballots, is entirely consistent with the state court litigation, and the Supreme Court of Appeals' order itself creates no impediment to entry of the relief requested here. Even if the Supreme Court of Appeals' order was deemed to have invalidated the votes for Federal office on the original ballots as a matter of state law, that state-law determination poses no impediment to this Court acting to remedy the violation of UOCAVA that decision has caused. The Supremacy Clause of the United States Constitution, Article 6, Clause 2, dictates that "the Laws of the United States ... shall be the supreme Law of the Land." States have an "obligation under the Supremacy Clause, to protect federally guaranteed civil rights as zealously as would a federal court." *Rachel v. Georgia*, 342 F.2d 336, 342 (5th Cir. 1965). In this case, therefore, Defendants have an obligation to protect the federally-guaranteed civil rights of UOCAVA voters to vote by absentee ballot in Federal elections. *See Cunningham*, 2009 WL 3350028, at *10 (E.D. Va. Oct. 15, 2009) ("Virginia has an obligation under the Supremacy Clause to protect the federally-guaranteed civil right of UOCAVA voters to vote by absentee ballot in federal elections. To the extent that protecting that right conflicts with Virginia law, Virginia law must give way."). In addition, Federal courts are authorized to

---

[8] Counting the votes for Federal office cast on West Virginia's original ballots is the functional equivalent of counting the special emergency ballot Congress established for UOCAVA voters to cast votes for Federal office when voters believe they will not receive their State's ballots in time. UOCAVA provides for a Federal write-in ballot ("FWAB") "for use in . . . elections for Federal office by absent uniformed services voters and overseas voters who make timely application for, and do not receive, States absentee ballots." 52 U.S.C. § 20303(a)(1). None of these ballots would have differed with respect to the votes for Federal office, and it should not matter, functionally, whether an affected UOCAVA voters' vote for Federal office was cast on a ballot sent out by the State under UOCAVA (whether an original ballot or a corrected ballot) or on a FWAB submitted under UOCAVA.

order States to comply with federal law, States have a duty to obey such orders, and States cannot excuse violations of federal law. *See Cooper v. Aaron*, 358 U.S. 1, 18–19 (1958); *see also Kimani v. Holder*, 695 F.3d 666, 671 (7th Cir. 2012) ("The Supremacy Clause makes federal law binding on all state actors; no employee of Illinois can give anyone a justification for disobeying a federal statute.").

## IV. CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court enter judgment against the Defendants for violating UOCAVA by failing to permit eligible UOCAVA voters to cast votes for Federal office, and order the Defendants to ensure that the votes for Federal office contained on the four original UOCAVA ballots at issue are counted and included in the vote totals for the November 4, 2014 Federal general election.

Respectfully submitted,

| | |
|---|---|
| R. BOOTH GOODWIN II<br>United States Attorney | VANITA GUPTA<br>Acting Assistant Attorney General<br>Civil Rights Division |
| By: /s/ *Gary L. Call*<br>GARY L. CALL<br>Assistant United States Attorney<br>WV State Bar No. 589<br>P.O. Box 1713<br>Charleston, WV  25326<br>Telephone:     (304) 345-2200<br>Facsimile:      (304) 347-5440<br>gary.call@usdoj.gov | /s/ *SaraBeth Donovan*<br>T. CHRISTIAN HERREN, JR.<br>SARABETH DONOVAN<br>SPENCER R. FISHER<br>Attorneys, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20530<br>Telephone:     (202) 305-2552<br>Facsimile:      (202) 307-3961<br>spencer.fisher@usdoj.gov<br>sarabeth.donovan@usdoj.gov |

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on December 5, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

RICHARD R. HEATH, JR.
Deputy Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
Telephone:     (304) 558-2021
Facsimile:      (304) 558-0140
richie.r.heath@wvago.gov

MISHA TSEYTLIN
Deputy Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
Telephone:     (304) 558-2021
Facsimile:      (304) 558-0140
misha.tseytlin@wvago.gov

J. ZAK RITCHIE
Assistant Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
Telephone:     (304) 558-2021
Facsimile:      (304) 558-0140
zak.j.ritchie@wvago.gov

JENNIFER S. GREENLIEF
Assistant Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
Telephone:     (304) 558-2021
Facsimile:      (304) 558-0140
jennifer.s.greenlief@wvago.gov

          /s/ *SaraBeth Donovan*
          SaraBeth Donovan