UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                  Civil Action No. 2:14-27456

THE STATE OF WEST VIRGINIA
and NATALIE E. TENNANT,
Secretary of State of West Virginia,
in her official capacity,

       Defendants.


<u>MEMORANDUM OPINION & ORDER</u>


      The dispute in this case arises out of the administration of the November 4, 2014 election, and in particular the provision of absentee ballots to certain overseas citizens and uniformed service members.  For reasons that are more fully described below, thirty absentee voters in the 35th House of Delegates District were provided with two separate absentee ballots -- an original ballot, and, later, a corrected ballot -- in the run up to the election.  Four of those voters returned only original ballots.  Those four ballots are the only ones now at issue in this case.  The West Virginia Secretary of State, Natalie Tennant, has ordered that those original ballots may not be counted.  The United States maintains that they must

be counted in the races for United States Senate and United States House of Representatives.

On November 25, 2014, the parties presented their Integrated Pretrial Order.  On the same date, the parties entered into a joint stipulation of facts and informed the court that no material fact remained in dispute between them.[1]  The United States submitted its brief on the merits on December 5, 2014.  The defendants responded on December 12, 2014, and the plaintiff replied on December 18, 2014.  The court now makes the following findings of fact and conclusions of law.

I.

The Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C.A. §§ 20301-20311 (2014), is a federal law that requires states to permit uniformed service voters and overseas citizens to "vote by absentee ballot in general, special, primary, and runoff elections for Federal office[.]" 52 U.S.C.A. § 20302(a)(1).  States are specifically responsible for transmitting absentee ballots to "absent uniformed service

---

[1] The joint stipulation also includes a number of documentary exhibits.  The parties have stipulated that those documents are admissible, and agree "not to impose evidentiary objections to those documents on the basis of authenticity, foundation, hearsay, or relevancy."  Joint Stipulation of Undisputed Facts and Law ("Joint Stip.") at 8.

voter[s] or overseas voter[s] . . . not later than [forty-five]
days before the election," provided that the voter requests the
ballot at least forty-five days before the election.  <u>Id.</u>
§ 20302(a)(8)(A).  Under the statutory framework, the deadline
for transmitting absentee ballots to absent uniformed service
members and overseas citizens (the "UOCAVA voters") who
requested them at least forty-five days before the November 4,
2014 election was September 20, 2014.  <u>See</u> Joint Stip. ¶ 7.

     The parties agree that the defendants initially
transmitted ballots to UOCAVA voters in a timely manner on
September 19, 2014 (the "original ballots").  <u>See</u> Joint Stip.
¶ 9.  Three days after that deadline, however, the Kanawha
County Republican Executive Committee ("KREC") and Marie McDavid
filed a petition for a writ of mandamus with the Supreme Court
of Appeals of West Virginia, seeking to require Secretary
Tennant and the State Election Committee to substitute McDavid
as the Republican candidate in the race for the House of
Delegates in the State's 35th House District following the
withdrawal of the party's original candidate.  Joint Stip. ¶ 10;
<u>see also</u> <u>State ex rel. McDavid v. Tennant</u>, No. 14-939, slip op.
at 1-2 (W. Va. Oct. 1, 2014).  Specifically, the petition prayed
that the Supreme Court of Appeals would compel the Secretary of
State to certify McDavid, add her to the ballot, and --

critically -- instruct the Kanawha County Clerk to "mail valid ballots to all absentee voters with instructions that the invalid ballot that is incomplete shall be void."

On October 1, 2014, the Supreme Court of Appeals ruled in favor of McDavid and the KREC, granted the writ of mandamus, ordered McDavid's name to be added to the ballot, and ordered the Secretary of State to issue corrected ballots.  Joint Stip. ¶ 11; McDavid, No. 14-0939, slip op. at 10.  The court's opinion did not specifically address whether the original ballots were to be considered void but, as noted, the writ was granted.  That same day, Vera J. McCormick, the Clerk of the Kanawha County Commission, wrote to the thirty UOCAVA voters in the 35th House District who previously received the original ballots, informed them of the Supreme Court of Appeals' decision, and advised that new ballots would be forthcoming in due course.  Joint Stip., Ex. 2.  The letter asked the UOCAVA voters to "return [the] original ballot in addition to th[e] new ballot," but did not indicate whether the original ballot remained valid.  Id.

On October 3, 2014, just thirty-two (rather than forty-five) days prior to the election, revised ballots listing McDavid as a candidate (the "corrected ballots") were transmitted to the UOCAVA voters in the 35th House District. Joint Stip. ¶ 16.  The October 3, 2014 transmission also

4

included instructions to the UOCAVA voters on how to return

their ballots.  Joint Stip. ¶ 37.  Those instructions directed

voters to, among other things, read and sign an enclosed "Oath

of Voter" that contained the following attestation:

> I understand that I may only cast one ballot in any
> election.  I further understand that anyone who votes
> more than once in the same election; or knowingly
> votes or attempts to vote more than one ballot for the
> same office . . . shall be guilty of a misdemeanor,
> and, on conviction thereof, shall for each offense be
> fined not more than one thousand dollars or confined
> in the county jail for not more than one year, or
> both[.]

Joint Stip., Ex. 3 at 4.  The instructions did not otherwise

explain whether the original ballots remained valid, or whether

the UOCAVA voters were required to return a corrected ballot.

Joint Stip. ¶ 37.

Five days later, on October 8, 2014, Secretary

Tennant's office sent a follow up e-mail to the UOCAVA voters in

the 35th House District that read, in pertinent part, as

follows:

> As you may be aware, a change was made to the ballot
> after the original absentee ballot was mailed to you.
> The County Clerk['s office] . . . continue[s] their
> efforts to make sure you have an opportunity to vote
> the corrected ballot.  . . . .  The Department of
> Justice has requested that this office . . . reach out
> to you to verify that you have received the corrected
> ballot and that you have enough time to return it to
> be counted.

Joint Stip., Ex. 5.  The e-mail "did not address whether original ballots cast by UOCAVA voters would be counted and did not address the validity of any votes cast for the Federal offices on the original ballot."  Joint Stip. ¶ 39.

In the weeks that followed, most of the UOCAVA voters in the 35th House District responded to the Secretary's outreach efforts and confirmed that they received the corrected ballot; many also indicated that they foresaw no barrier to returning the corrected ballot in time to be counted.  Some voters never responded at all.  Two of the four voters at issue (Voter A and Voter B) called the Kanawha County Commission and explained that they had already returned the original ballot and shredded their corrected ballots.  Joint Stip. ¶ 40.  They indicated that they did not intend to return corrected ballots, id., and later clarified that they received the corrected ballot after submitting their original ballots and were "afraid to send back two ballots," Joint Stip. ¶ 56.

On October 14, 2014, Secretary Tennant's office e-mailed Voter A and Voter B, and advised them that it was "not certain that the first (pre-correction) ballot w[ould] be counted."  Joint Stip., Ex. 6.  The e-mail explained that "[a]ny decision on whether to count the [original] ballot w[ould] be made by the Kanawha County [Commission's] board of canvassers,"

and warned that "[t]he only way to be certain that your vote
will count is to vote and submit the corrected ballot[.]"  Id.
It appears, however, that Voter A and Voter B did not receive
the Secretary's e-mail until possibly as late as November 10,
2014.[2]

        As the Secretary's e-mail to Voter A and Voter B
demonstrates, there was a prevailing sense of uncertainty about
the validity of the original ballots throughout the month of
October.  In a letter to federal officials dated October 3,
2014, the Secretary's office stated that it had "received
assurance that if the second ballot . . . [wa]s not returned in
time to be counted, but the initial ballot ha[d] been returned,
[Kanawha County would] count the initial ballot."  Joint Stip. ¶
15.  Based on other correspondence in the record, it appears
that the Kanawha County board of canvassers in fact "voted to
accept all [original] ballots" at some point before October 21,
2014.  See Joint Stip., Ex. 1.  Nevertheless, perhaps hoping to
remove any doubt, Secretary Tennant filed a motion, on October
27, 2014, with the Supreme Court of Appeals, requesting
clarification that the decision in McDavid did not prohibit

_____

[2] Voter A and Voter B are identified in the record as a mother
and son living together in Canada. Joint Stip. ¶¶ 51, 55.  An e-
mail from Voter A to the Secretary of State's office, dated
November 10, 2014, stated that "she could not reply until [then]
because her computer broke."  See Joint Stip. ¶ 56.

counting votes cast on validly executed original ballots in the federal races, provided that no corrected ballot was received. See Joint Stip. ¶ 23.  Three days later, on October 30, 2014, the Supreme Court of Appeals refused the request for clarification without comment, Joint Stip. ¶ 25, and the Secretary interpreted that refusal as "an affirmative indication that the writ of mandamus" granted in McDavid "prohibits the counting of any votes cast on any original ballot," Joint Stip. ¶ 26.

The following day, the Friday before Election Day, the United States initiated this action, charging the State and the Secretary of State with violating the UOCAVA and requesting: (1) "a declaratory judgment under 28 U.S.C. § 2201 that the failure . . . to ensure that absentee ballots [were] transmitted . . . at least 45 days in advance of the November 4, 2014 [election] . . . violates 52 U.S.C. § 20302(a)(8)(A)"; and (2) an injunction ordering the defendants to "take such steps as are necessary to ensure that affected UOCAVA voters in State Delegate District 35 have sufficient opportunity . . . to receive, mark, and return their ballots."  See Compl. at Prayer of Relief.

On Monday, November 3, 2014, the parties submitted, and the court entered, a consent decree that extended the receipt deadline for corrected ballots returned by mail until

8

November 17, 2014; the consent decree also required the
Secretary of State to inform the UOCAVA voters in the 35th House
District -- for the first time -- that "they had to return the
corrected ballot . . . if they wished to have their vote counted
in the election." Joint Stip. ¶¶ 29, 45-46, 48.
Notwithstanding the deadline extension, the United States
reserved the right to move for "supplemental relief . . . with
regard to the counting of votes . . . on an original ballot . .
., if that ballot [wa]s the only ballot returned by that
voter[.]" Consent Decree at 8; see also Joint Stip. ¶ 29.

        Election Day came and went, and eighteen of the thirty
UOCAVA voters in the 35th House District returned corrected
ballots. Joint Stip. ¶ 49. Eight more returned no ballot.
Joint Stip. ¶ 50. The remaining four voters returned original
ballots on or before November 4, 2014, but did not return a
corrected ballot. Joint Stip. ¶ 51. Those four included Voter
A and Voter B, plus two others -- Voter C and Voter D[3] -- who
both previously informed Secretary Tennant's office that they
received the corrected ballot and foresaw no obstacle to
returning it, but nevertheless returned only the original
ballot.

---

[3] "According to information on file with the State, [Voter C and
Voter D] reside[] domestically in North Carolina[.]" Joint
Stip. ¶ 51.

Finally, on November 6, 2014, prior to the start of canvassing, Secretary Tennant issued an order directing "the Kanawha County board of canvassers to <u>NOT</u> count any [original] ballot in any federal, state or county election on the ballot[.]"  As a result, no votes cast on original ballots were counted in the canvass for the two federal races.

II.

All that remains to be determined in this case is the fate of the votes cast on original ballots by Voters A, B, C, and D in the races for United States Senate and United States House of Representatives (the "contested votes").  The United States has requested an injunction ordering the defendants to count those votes and include them in the tally for the House and Senate elections.  The Secretary "believe[s] that all voters who cast only [o]riginal [b]allots should have their votes counted," but also maintains that the Supreme Court of Appeals' decision in <u>McDavid</u> prohibits her from ordering the contested votes to be counted.  <u>See</u> Secretary of State's Response to the United States' Brief on the Merits ("Secretary's Resp.") at 1-2. She has declined to take a position on whether the relief requested by the United States is appropriate.  <u>Id.</u> at 4.  The State of West Virginia responds that it "does not oppose the

10

relief requested by the United States in its brief on the merits." West Virginia's Response to the United States' Brief on the Merits ("State's Resp.") at 1.

The UOCAVA empowers the Attorney General to seek "declaratory or injunctive relief as may be necessary to carry out" the statute's requirements. See 52 U.S.C.A. § 20307(a). As noted, the United States' complaint in this case sought both forms of relief -- a declaration that the defendants violated 52 U.S.C. § 20302(a)(8)(A), and an injunction ordering the defendants to "take such steps as are necessary to ensure that affected UOCAVA voters in State Delegate District 35 have sufficient opportunity . . . to receive, mark, and return their ballots." See Compl. at Prayer of Relief. In addition, the pretrial order prepared by the parties raises the alternative theory that the "State's failure to count the votes for Federal office cast on the four ballots at issue violates" 52 U.S.C.A. § 20302(a)(1), which generally requires each state to "permit [UOCAVA] voters to use absentee registration procedures and to vote by absentee ballot in" federal elections. Thus, the resolution of this case turns on two questions: First, did the defendants violate §§ 20302(a)(1) or 20302(a)(8)(A)? Second, if so, is the United States entitled to the injunction it seeks?

A.

The first question is easily answered.  Section 20302 (a)(8)(A) requires States to transmit validly requested absentee ballots to "absent uniformed service voter[s] or overseas voter[s] . . . not later than [forty-five] days before the election," provided that the voter requests the ballot at least forty-five days before the election.  Id. § 20302(a)(8)(A).  The parties agree that all thirty of the UOCAVA voters in the 35th House District requested an absentee ballot more than forty-five days before the election, see Joint Stip. ¶ 9, and also agree that corrected ballots were not transmitted to those voters until October 3, 2014, only thirty-two days before the election, Joint Stip. ¶ 16.  The parties have stipulated, and the court agrees, that transmitting the corrected ballots on October 3, 2014 violated § 20302(a)(8)(A).[4]  See, e.g., United States v. Alabama, 857 F. Supp. 2d 1236, 1240-42 (M.D. Ala. 2012) (finding high likelihood of success on the merits of a § 20302(a)(8)(A) claim where the state issued absentee ballots less than forty-five days before a federal election); see also, Joint Stip. ¶ 8.

---

[4] In light of this disposition, the court need not address whether the defendants' conduct violated § 20302(a)(1).

B.

The remaining question is more complex.  To obtain a permanent injunction, the plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 126 (4th Cir. 2011) (reciting the eBay factors).  Even then, both the UOCAVA and the limits of the court's equitable powers dictate that the relief prayed for must be no more than is necessary to carry out the statute's requirements.  See 52 U.S.C.A. § 20307(a) ("The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as may be necessary to carry out this chapter."); Kentuckians for the Commonwealth, Inc. v. Rivenburgh, 317 F.3d 425, 436 (4th Cir. 2003) ("It is well established that 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" (quoting Califano v. Yamasaki, 442 U.S. 682, 702 (1979))).  In other words, any injunction granted must

13

"carefully address only the circumstances in the case," without sweeping more broadly than "necessary to provide complete relief to the plaintiff." Mead Johnson & Co., 639 F.3d at 128 (internal quotation marks and citation omitted).

1.

After considering the relevant factors, the court concludes that injunctive relief is proper. As it stands, four UOCAVA voters who attempted to cast an absentee ballot would not have their votes counted in the federal races. "Courts routinely deem restrictions on fundamental voting rights irreparable injury." League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 247 (4th Cir. 2014) (collecting authority), mandate stayed North Carolina v. League of Women Voters of N.C., 135 S. Ct. 6 (Oct. 8, 2014) (mem.). Several courts have therefore concluded that a state's failure to timely issue UOCAVA ballots clearly presents the likelihood, Alabama, 857 F. Supp. 2d at 1240-42, or reality of irreparable harm, United States v. Georgia, 952 F. Supp. 2d 1318, 1331-32 (N.D. Ga. 2013) ("Irreparable harm occurs when a UOCAVA voter is denied the right to receive a sufficient absentee ballot in accordance with the provisions of" § 20302(a)(8)(A)). More generally, courts also recognize that a state's failure to count absentee ballots protected by federal law gives rise to

14

irreparable harm.  Cf. Hoblock v. Albany Cnty. Bd. of Elections,
422 F.3d 77, 97 (2d Cir. 2005) ("The district court found that
the plaintiff voters will be irreparably harmed if the Board
certifies the election results without counting their absentee
ballots.  We agree."); Hershcopf v. Lomenzo, 350 F. Supp. 156,
159 (E.D.N.Y. 1972) ("The fact that throughout the state at
least nineteen boards of elections apply the statute so that
absentee voters . . . will be disenfranchised is sufficient
irreparable injury[.]").  There is no prospect that such an
injury could be remedied by money damages.

        Regarding the third factor, the court finds that the
balance of the equities tips in favor of the United States.  The
potential harm to the UOCAVA voters -- the possibility that
their votes will not be counted -- far exceeds the burden to the
State caused by counting the contested votes.  See Alabama, 857
F. Supp. 2d at 1242 (noting that the State is already "legally
mandated . . . to vindicate the fundamental right of its
military and overseas constituents to vote in federal elections"
under the express terms of the UOCAVA).  Indeed, the State does
not object to the additional supplemental relief requested,
State's Resp. at 1, and the Secretary of State has repeatedly
expressed her desire for every vote to be counted, Secretary's
Resp. at 1-2.

Finally, the public interest will be served, rather than disserved, by an injunction.  For our citizens living abroad, and for uniformed service members, "voting by absentee ballot may be the only practical means to exercise" their right to vote.  <u>Bush v. Hillsborough Cnty. Canvassing Bd.</u>, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000).  "Thus, ensuring that these voters, many of whom risk their lives at the request of their government, have the opportunity to vote is certainly in the public interest."  <u>Alabama</u>, 857 F. Supp. 2d at 1242; <u>see also</u> <u>Doe v. Walker</u>, 746 F. Supp. 2d 667, 670 (D. Md. 2010) (Noting that the UOCAVA was amended "in response to the widespread disenfranchisement of absent uniformed services and overseas voters during the November 2008 general elections.").

2.

The court also concludes that ordering the defendants to count the contested votes is both necessary to carry out the provisions of the UOCAVA, and no broader than necessary to provide complete relief to the plaintiff.  The purpose of § 20302(a)(8)(A) is "to allow absent uniformed service voters and overseas voters enough time to vote in an election for Federal office."  52 U.S.C.A. § 20302(g)(1)(A).  Indeed, the United States specifically stated that it was "bringing this enforcement action to ensure that West Virginia's [UOCAVA voters

16

would] have sufficient opportunity . . . to receive, mark and return their absentee ballots[.]"  Compl. ¶ 2.  To achieve that goal, the plaintiff prayed for an injunction ordering the defendants to "take such steps as are necessary to ensure that affected UOCAVA voters in State Delegate District 35 have sufficient opportunity . . . to receive, mark, and return their ballots."  See Compl. at Prayer of Relief.

In the usual case, that relief might well have been provided by simply extending the state-law ballot receipt deadline, as the parties agreed to do here.  See, e.g., Alabama, 857 F. Supp. 2d at 1240-42; see also United States v. Cunningham, No. 08-709, 2009 WL 3350028, at *10 n.3 (E.D. Va. Oct. 15, 2009) (collecting nine additional cases authorizing deadline extensions ranging in length from three business days to fourteen days.).  Indeed, at an earlier stage in this litigation, when little was known about the content of the defendants' communications with the UOCAVA voters in the 35th House District, it appeared that remedy may suffice in this case as well.  Order herein of Nov. 18, 2014, denying preliminary injunction.  It is now clear, however, that the ongoing uncertainty regarding the validity of the original ballots deprived the four affected UOCAVA voters of sufficient time to vote in the November 4, 2014 election.

As discussed above, the UOCAVA voters in the 35th House District received conflicting information about their obligation to vote a corrected ballot.  The October 1, 2014 mailing asked voters to return both ballots, but the instructions included with the corrected ballots on October 3, 2014 advised voters that it was a violation of State law to vote more than one ballot in any election.  The effect of these conflicting messages is not purely theoretical:  Voter A and Voter B specifically stated that they shredded their corrected ballots because they had already returned their original ballots, and were afraid to return two ballots.  Although Secretary Tennant's office attempted to inform Voter A and Voter B on October 14, 2014 that it was "not certain that the first (pre-correction) ballot w[ould] be counted," no UOCAVA voter in the 35th House District was told definitively of the need to return a corrected ballot until November 3, 2014, the night before Election Day.  In effect, voters who had not yet done so were left with one day to mark and return their corrected ballot -- by any measure, that does not constitute the meaningful opportunity to cast a ballot that § 20302(a)(8)(A) seeks to ensure.

III.

The defendants violated § 20302(a)(8)(A) of the UOCAVA
by failing to transmit valid absentee ballots to voters in the
35th House District forty-five days before the November 4, 2014
election.  Although they agreed to extend the ballot receipt
deadline, doing so was not sufficient to provide the plaintiff
with complete relief in light of the uncertainty concerning the
validity of the original ballots throughout the month of
October.  Absent further injunctive relief, four voters who
returned an original ballot will be disenfranchised.

The court is not unmindful that ordering the relief
requested by the plaintiff will require the defendants to count
votes that Secretary Tennant believes are invalid under State
law.  But, as noted, the Attorney General is empowered to seek
(and so the courts presumably are empowered to grant)
"injunctive relief as may be necessary to carry out" the
UOCAVA's requirements.  See 52 U.S.C.A. § 20307(a).  Those
federal-law requirements are supreme, U.S. Const. art. VI, cl.
2, and though the State retains an important interest in the
orderly conduct of its elections, "deference to state decision-
making does not require the court to sit by idly and watch
violations of the law persist.  In some cases, and this is one,

if federally-guaranteed voting rights are to be protected, the court must act." Alabama, 857 F. Supp. 2d at 1242 (internal quotation marks and citation omitted).  Here, the confusion caused by the issuance of the corrected ballots and the ensuing uncertainty about the validity of the original ballots deprived UOCAVA voters in the 35th House District of a meaningful opportunity to receive, mark, and return a ballot in the November 4, 2014 election.  For the small number of those voters who expressed their intent to vote on an original ballot, but failed to return a corrected ballot, counting the original ballot provides the only meaningful relief available.

Accordingly, it is ORDERED that the defendants be, and they hereby are, directed to take such steps as are necessary to ensure that: (1) the votes in the November 4, 2014 election for United States Senate and United States House of Representatives on otherwise conforming original ballots cast by the four UOCAVA voters in the 35th House District who did not return a corrected ballot are counted; and (2) the results in those two races are amended to reflect the inclusion of those votes.  It is further ORDERED that the defendants be, and they hereby are, directed to notify the court and counsel for the United States within forty days of the entry of this order that those votes in those two races have been counted.

The Clerk is requested to transmit a copy of this order to all counsel of record.

DATED: December 22, 2014

John T. Copenhaver, Jr.
United States District Judge

21